THOMAS GALLAGHER, DEFENDANT IN ERROR, v. HORACE McBRIDE, PLAINTIFF IN ERROR.

Argued February 28, 1901—Decided June 10, 1901.

1. The plaintiff, a grocer, had supplied Dr. McBride with groceries and meat until 1894, when the doctor died, leaving a widow and five infant children. The defendant was appointed guardian of the children. The plaintiff, after the death of the doctor, called on the defendant in regard to continuing to deal with the widow, and the defendant, on August 28th, 1894, wrote a letter to the plaintiff as follows: "You give Dr. McBride widow all the meat and groceries they want for one week, and bring me the bill every Tuesday morning." (Signed) "Horace McBride." Plaintiff supplied the widow with groceries and meat until some time in 1897, receiving payments from the defendant from time to time. The bills were made out to the widow as purchaser, and were from time to time sent to the defendant, on which he made various payments. Subsequently, meat and groceries were furnished until the bill amounted to $1,700, which, with credits, was reduced to $562.73, for which this suit was brought. In November, 1897, the defendant, describing himself as guardian of these children, certified in writing that he had delivered to the plaintiff a deed for premises of the infants; that the purchase-price to be paid was as follows: "Taxes, assessments," &c., and then follows this clause: "and to credit the balance of said purchase-money on account of the bill for groceries sold by him to me as such guardian." (Signed) "Horace McBride." The defendant set up as a defence the statute of frauds. *Held*, that if the person receiving goods is liable to pay for them, then, ordinarily, the promise of a third person to pay for them is a collateral liability, and not actionable, unless in writing. But if the vendor sells goods solely on the credit of one person, and, at his request, delivers them to another, the former is alone liable, and his liability is not affected by the statute. The fact that the goods are charged to the person to whom delivered is not conclusive that they were sold on his credit.

The question whether the defendant's undertaking is an original undertaking or collateral, must be determined from all the facts in the case. The trial judge submitted to the jury the question whether the defendant intended to be personally liable for the goods in question, and the statute of frauds was no defence.

2. It was contended by the defendant that the written order related to the delivery of meat and groceries for one week only. That construction is against the language of the order, which directed the plaintiff to "bring me the bill every Tuesday morning." If there be any ambiguity on the face of the paper, it was cured by the conduct of the parties. The weekly bills were delivered to the defendant, and accepted by him without objection until the account reached the amount of $1,700, extending over a period of more than three years.

3. It was insisted that the obligation assumed by the defendant was to pay out of the proceeds of the property in his hands as guardian. Such was undoubtedly the expectation of the defendant, with the knowledge, probably, of the plaintiff. But the contract was a contract with the defendant individually, and it was incompetent to vary the terms of this contract by oral testimony of the understanding of the defendant.

4. Objection was made to a stipulation made by the attorneys of the respective parties at a former trial of this suit. The stipulation concerned the manner in which the plaintiff had made payments on the property conveyed to him by the defendant. It was made in open court, and taken down by the court stenographer as part of the record in the case. The court admitted this stipulation in evidence under an exception. *Held,* that the admission in this case being distinct and formal, or such as may be termed a solemn admission, made for the express purpose of relaxing the stringency of some rule of practice or of dispensing with the formal proof of some document or fact at the trial, it was properly received in evidence.

On contract. On error to the Hudson Circuit.

Before DEPUE, CHIEF JUSTICE, and Justices DIXON, COLLINS and HENDRICKSON.

For the plaintiff in error, *William B. Gillmore.*

For the defendant in error, *James A. Gordon.*

The opinion of the court was delivered by

DEPUE, CHIEF JUSTICE. The plaintiff was a grocer in Jersey City. He had supplied Dr. McBride, the brother of

the defendant, with groceries and meat until 1894, when the doctor died, leaving a widow and five infant children. The defendant was appointed guardian for these children. The plaintiff called on the defendant in regard to continuing to deal with the widow. McBride testified to the effect that he thought he could use the infants' estate to pay bills for groceries and meat furnished to the family of the doctor. He wrote a letter to the plaintiff, of which this is a copy:

"JERSEY CITY, August 28, 1894.

"You give Dr. McBride widow all the meat and groceries they want for one week, and bring me the bill every Tuesday morning.

(Signed)   "HORACE MCBRIDE."

Gallagher supplied the widow with groceries and meat until some time in 1897, receiving payments from McBride from time to time, which payments were always made out of the estate of the five infants. McBride received no part of the groceries or meat. The bills for them were made out to the widow, as a purchaser, and were from time to time sent to McBride, on which he made various payments.

Under the agreement of August 28th, 1894, meat and groceries were furnished until the bill amounted to $1,700, which, with credits, was reduced to $562.73, for which this suit was brought. The construction the parties put upon this agreement constitutes it a continuing agreement. The plaintiff was to furnish meat and groceries that the family would want for one week, and bring in the bill every Tuesday morning. That language indicates that this contract was not to be restricted to a single week.

In addition to the letter of August 28th, 1894, by a paper dated November 8th, 1897, the defendant, describing himself as guardian of these children, certified that he had delivered to Thomas Gallagher a deed for the premises of the infants; that the purchase-price to be paid was as follows: "Taxes, assessments," &c., and then follows this clause: "And to credit the balance of said purchase-money on account of the

bill for groceries sold by him to me as such guardian. Said Gallagher also agrees to extend the time for the payment of the balance of said bill for groceries for the period of three months." (Signed) "Horace McBride."

The suit was brought to recover the balance due on this bill, and resulted in a verdict for the plaintiff for $583.91. The question in the cause is whether the defendant is personally liable for the payment of this debt. The contention is that in virtue of the statute of frauds he incurred no personal obligation for the payment of these goods. It will be observed at the outset that he signed the letter as an individual, and not as guardian or as acting in a representative capacity.

The undisputed facts are that Mrs. McBride, the widow, ordered and received every portion of the goods for which this suit was brought, and they were charged to her by the plaintiff; that the plaintiff never ordered any part thereof, except under the written order which has already been referred to; that payments on account of the purchase-money were paid from the estate of the infants and widow in the hands of the defendant. Another fact must be borne in mind—that the credit in this instance was given to the defendant in virtue of a written order, and that neither the widow nor the children were personally called upon to pay any part of these bills.

In answer to the plaintiff's claim, the defendant sets up the statute of frauds as a defence. He contends that the widow, in this instance, was the original debtor, and that the defendant's undertaking was collateral. If this contention is verified, this suit must fail, for the written order in this case does not purport to be a contract of guaranty within the statute of frauds. The law on this subject is well settled. The goods in this case were delivered to the widow. If she became personally liable, either by express or implied contract, for them, the engagement of the defendant, although made at the same time and upon the same consideration, is a promise to pay the debt of a third person within the statute, and should be in writing. But if the articles in question were

supplied entirely on the credit of the promisor, so that the third party is not liable at all, then the promise is not within the statute. The test is this: Where the promise is made before the credit is given, to decide whether one promising is an original debtor or a guarantor, namely, whether credit was given to the person receiving the goods. If it was, then such promisor is a guarantor only, undertaking to pay another's debt. If no credit was given to the person receiving the goods, then the promisor himself is debtor for goods sold to him and delivered to a third party by his order. Such a promise is not a promise to pay the debt of another. If such was the original promise on the part of the defendant, the fact that the goods were delivered to the widow and were for the benefit of the widow and children is wholly unimportant. *Hetfield* v. *Dow,* 3 *Dutcher* 440, 452; *Cahill* v. *Bigelow,* 18 *Pick.* 369, and cases cited in Hetfield *v.* Dow; *Hazeltine* v. *Wilson,* 26 *Vroom* 250; *Birkmyr* v. *Darnell, Salk.* 27, 1 *Sm. Lead. Cas.* 326; *Clark Cont.* 95; *Brown St. of F.,* § 197. In such cases the important question is, to whom is the credit given? If the person receiving the goods is liable to pay for them, then, ordinarily, the promise of a third person to pay for them is collateral liability, and not actionable, unless in writing. But if the vendor sells goods solely on the credit of one person, and, at his request, delivers them to another, the former is alone liable, and his liability is not affected by the fourth section of the statute. The fact that the goods are charged to the person to whom delivered is not conclusive that they were sold on his credit. The question whether the defendant's undertaking is an original undertaking or collateral, must be determined from all the facts in the case. 1 *Benj. Sales,* § 112, *and notes (Corbin's ed.)* ; 6 *Eng. Rul. Cas.* 296, 297.

The evidence on this subject is plenary. The widow, it appears, had applied to the plaintiff to open an account. The plaintiff told her that she must have an order. She went to the defendant and got the order produced in court. The plaintiff testified: "I went on and furnished the goods— sent the goods to Mrs. McBride. I charged the goods to Mrs. McBride and made out the bills to her. The bills were sent

to the defendant every week or every two weeks. For several months he paid along, and finally they commenced to run up, and I asked him about it, and he said he didn't have any money. When the bills ran up to $1,700 I told the defendant that I couldn't stand it any longer, that something must be done, and he proposed to give me a house; he wanted me to take the property; he had appraisements on it. I said I would take the property and sell it." A certain sum was realized from the sale of the property, leaving a balance of $562.73, which is sued for. Werner, the plaintiff's clerk, testified that he made up the accounts against the defendant and took them down to him; that he never took any bills to Mrs. McBride or rendered any bill to her, and that he took the bills to the defendant every week or two; that when he took the bills to the defendant the defendant said he would look over them with Mrs. McBride and see if they were all right; he said he had looked them over with Mrs. McBride and said they were all right, and returned them to the witness.

The order already referred to, as I have said, does not purport to be a memorandum under the statute of frauds. It is such an order as would be given by a party who was ordering goods on his credit to be delivered to a third party, and is signed by the defendant as an individual. It is quite clear that the plaintiff did not part with his goods on the credit of the widow, but that he was induced to deliver the goods to her on some sort of an assurance on the part of the defendant.

Subsequently the defendant as guardian sold and delivered to the plaintiff a deed for the premises of the infants in pursuance to an order of the Court of Chancery. A paper was prepared by the defendant in duplicate, reciting that the purchase-price of the property conveyed was to be paid in a particular manner, and containing these words: "and is to credit the balance of such purchase-money on account of the bill for groceries sold by him to me as such guardian. Said Gallagher also agrees to extend the time for the payment of the balance of said bill for groceries for the period of three months from the date hereof." This paper is signed

by the defendant personally, and is consented to by the plaintiff. It was written and signed in the presence of the defendant's attorney, Mr. Mattheus. The defendant testified: "I refused to sign that paper on the words, 'sold the goods to me'—not to the widow, but to me; sold to me as guardian; I refused to sign it; I was instructed by my attorney to sign that paper, and signed it."

The learned judge, in the trial of the cause, submitted the question whether the defendant intended to be personally liable for the goods in question to the jury, with proper instructions.

The other question raised on this branch of the case was with respect to the construction of the order. It was contended by the defendant's counsel that it only related to delivery of meat and groceries for one week. That construction is against the language of the order, which directed the plaintiff to "bring me the bill every Tuesday morning." If there be ambiguity on the face of this paper, it is removed by the conduct of the parties. As already said, the weekly bills were delivered to the defendant, and accepted by him without objection until the account reached the amount of $1,700, extending over a period of more than three years.

The other contention with respect to the effect of this agreement was that the obligation assumed by the defendant was to pay out of the proceeds of the property in his hands as guardian. Such was undoubtedly the expectation of the defendant, with the knowledge, probably, of the plaintiff. But the contract in this case was a contract with the defendant individually, and it was incompetent to vary the terms of this contract by oral testimony, at least when confined to the understanding of the defendant. *Naumberg* v. *Young,* 15 *Vroom* 331.

Exception was taken, also, to the admission by the court of a certain stipulation made by the attorneys of the respective parties at a former trial of the issue in this cause. The stipulation concerned the manner in which the plaintiff had made payments on the property conveyed to him by the defendant. It appears that the stipulation was made in open

court and taken down by the court stenographer as part of the record of testimony in the case. The court admitted this stipulation in evidence, to which the defendant took an exception.

As a general rule an admission made by a party with respect to the merits of a case, is competent. Mr. Taylor, speaking on this subject, says: "In some cases they"—that is, admissions made by solicitors—"are conclusive, and may be given in evidence upon a new trial; though previously. to such trial the party give notice that he intends to withdraw them, or though the pleadings be altered, provided the pleadings do not relate to the admissions. But to this end they must be distinct and formal, or such as are termed solemn admissions, made for the express purpose of relaxing the stringency of some rule of practice, or of dispensing with the formal proof of some document or fact at the trial." 1 *Tayl. Ev.,* § 772; *Elton* v. *Larkins,* 5 *Car. & P.* 385; *Doe* v. *Bird,* 7 *Id.* 6; *Langley* v. *Earl of Oxford,* 1 *Mees. & W.* 508.

There is nothing in the nature of this evidence or in the manner in which it was presented that takes it out of the general rule. We think the evidence was properly received.

Finding no error on the record, the judgment should be affirmed.